FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Aug 19, 2025

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| SZETH ASLAN MAGNUS, State of Washington, Ex. Rel, Relator,<br><br>Plaintiff,<br><br>v.<br><br>WASHINGTON STATE DEPARTMENT OF CORRECTIONS, et al.,<br><br>Defendants. | No. 4:24-cv-05157-SAB<br><br>**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT** |

Before the Court is Defendants' Motion for Summary Judgment, ECF No. 43.[1] Plaintiff is pro se. Defendants are represented by Michelle M. Young. The motion was heard without oral argument.

Plaintiff is a state prisoner currently housed at Coyote Ridge Corrections Center ("CRCC"). He is suing the Washington State Department of Corrections ("DOC"), as well as four DOC personnel.[2] He asserts his statutory rights under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), as well as his

---

[1] In lieu of a response, Plaintiff submitted a so-called "Affidavit of Inquisition [and] Request for Discovery" (ECF No. 52). Given the absence of any other filings that could be construed as a response, the Court treats this filing as such.

[2] Plaintiff initially filed his complaint in the Franklin County Superior Court, but Defendants timely filed for removal pursuant to 28 U.S.C. § 1441.

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT #1**

state and federal constitutional rights, were violated when officials refused to grant his request for a personal yoga mat and zafu (meditation cushion) in his cell.

Defendants now move for summary judgment, asserting (1) Defendants did not substantially burden Plaintiff's religious exercise under RLUIPA; (2) even assuming Defendants substantially burdened Plaintiff's religious exercise under RLUIPA, the policy prohibiting personal yoga mats and zafus is the least restrictive means of furthering the compelling government interests of facility safety and security; (3) Defendants did not substantially burden Plaintiff's free exercise of religion under the First Amendment of the United States Constitution; (4) even assuming Defendants substantially burdened Plaintiff's free exercise of religion under the First Amendment, the policy prohibiting personal yoga mats and zafus satisfies the *Turner* factors; and (5) any Washington State Constitution claims are defeated by Plaintiff's failure to present a *Gunwall* analysis.

## Motion Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is no genuine issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The moving party has the initial burden of showing the absence of a genuine issue of fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party meets its initial burden, the non-moving party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248.

In addition to showing there are no questions of material fact, the moving party must also show it is entitled to judgment as a matter of law. *Smith v. Univ. of Wash. L. Sch.*, 233 F.3d 1188, 1193 (9th Cir. 2000). The moving party is entitled to judgment as a matter of law when the non-moving party fails to make a sufficient

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT #2**

showing on an essential element of a claim on which the non-moving party has the burden of proof. *Celotex*, 477 U.S. at 323. The non-moving party cannot rely on conclusory allegations alone to create an issue of material fact. *Hansen v. United States*, 7 F.3d 137, 138 (9th Cir. 1993).

When considering a motion for summary judgment, a court may neither weigh the evidence nor assess credibility; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

## Underlying Facts

The following facts are viewed in the light most favorable to Plaintiff, the party opposing the motion for summary judgment.

On May 30, 2021, and January 23, 2022, Plaintiff submitted requests to purchase a personal yoga mat and zafu. While yoga mats are available in the common areas of minimum security CRCC dormitories, Plaintiff specifically requested these items "for in-cell religious practice." After failing to receive a response to his requests, Plaintiff asked a chaplain to send an email following up on Plaintiff's requests, which the chaplain sent on September 20, 2023. On October 3, 2023, Defendant Jakstas replied to the chaplain's email, stating that Plaintiff's request had been denied. Specifically with regard to the yoga mat, Defendant Jakstas stated that the Property Committee had determined that an in-cell yoga mat would need to be smaller and composed of a material such as fabric or mesh.

Sometime after his requests were denied, Plaintiff sent Defendant Strange a "Legal Notice & Demand" (ECF 1-2 at 30–32), wherein he requested the Property Committee's decision be reconsidered. On March 11, 2024, Defendant Spooner sent Plaintiff a letter, noting that the DOC recognized a zafu and yoga mat would best serve his religious practices, and the DOC would explore options for acquiring a zafu and alternatives to the requested yoga mat that would conform with facility security requirements.

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT #3**

On March 17, 2024, Plaintiff sent a letter to Defendant Spooner, detailing the prior communications regarding his requests and noting that the minimum security units at CRCC have yoga mats available in common areas. On July 17, 2024, Defendant Jakstas sent Plaintiff a letter, informing him that a yoga mat was not permitted for in-cell religious practice because (1) the neoprene or rubber material could be misused or altered in such a way as to create a safety risk; (2) yoga mats would be difficult to pack and transport when relocating inmates within the facility; (3) yoga mats are not currently on the allowable personal or religious item lists, thus Plaintiff's request would require a policy revision; and (4) cleaning a rubber or neoprene yoga mat would require unauthorized cleaning agents and cleaning a fabric yoga mat would require laundering, for which there is currently no process in place.

## Legal Framework

### A. RLUIPA

Under RLUIPA, an inmate bears the initial burden of showing that (1) a prison's policy implicates a religious exercise and (2) the policy substantially burdens that religious exercise. *Holt v. Hobbs*, 574 U.S. 352, 360–61 (2015). A prison policy substantially burdens an inmate's religious exercise when the policy puts substantial pressure on the inmate to behave in a manner that violates the inmate's closely held religious beliefs. *Hartmann v. Calif. Dept. of Corrs.*, 707 F.3d 1114, 1125 (9th Cir. 2013).

Once a plaintiff has made this initial showing, the burden shifts to the defendant to show that the policy is "(1) in furtherance of a compelling governmental interest; and (2) the least restrictive means of furthering that compelling governmental interest." 42 U.S.C.A. § 2000cc-1; *see Warsoldier v. Woodford*, 418 F.3d 989, 995 (9th Cir. 2005). Under the least-restrictive means standard, a government defendant must demonstrate that it cannot achieve its goal of furthering a compelling government interest without imposing a substantial

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT #4**

burden on an inmate's exercise of religion. *Holt*, 574 U.S. at 364–65. In other words, if there is a less restrictive alternative available for the government to achieve its goals, then the alternative must be used. *Id* at 365. However, the government must only consider those reasonable alternatives that have been proposed by the plaintiff. *Walker v. Beard*, 789 F.3d 1125, 1137 (9th Cir. 2015) (noting that the government "is under no obligation to dream up alternatives that the plaintiff himself has not proposed").

Courts have specifically noted that RLUIPA protections do not override a correctional facility's need to maintain order and safety—with particular sensitivity being given to security concerns. *Cutter v. Wilkinson*, 544 U.S. 709, 722–723 (2005). Therefore, when the compelling state interest at issue is facility security, prison officials are entitled to deference. *Id*. at 724 n.13.

### B. First Amendment Free Exercise Clause

A violation of the First Amendment's Free Exercise Clause occurs when an inmate is prevented from engaging in religious exercise by a prison policy that is not reasonably related to a legitimate penological interest. *Freeman v. Arpaio*, 125 F.3d 732, 736 (9th Cir. 1997), overruled on other grounds by *Shakur v. Schriro*, 514 F.3d 878 (9th Cir. 2008). The burden placed on the inmate by the policy must be substantial: it must interfere with a religious practice that is central to the inmate's religious doctrine, and inconvenience does not rise to the level of a violation. *Id*. at 737.

In determining whether a prison policy is reasonably related to legitimate penological interests, courts consider four factors: (1) whether there is a valid, rational connection between the prison regulation and the legitimate penological interest underlying it; (2) whether the inmate maintains alternative means of exercising the asserted constitutional right; (3) the impact that accommodating the asserted right will have on guards, other inmates, and the allocation of prison resources generally; and (4) the absence of ready alternatives to the inmate's

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT #5**

proposed accommodation. *Turner v. Safley*, 482 U.S. 78, 89–91 (1987).

The burden of proving a prison regulation is invalid lies with the plaintiff. *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003). When an inmate retains alternative means of exercising the asserted right despite the challenged policy, courts must be mindful of the deference owed to prison officials when determining the challenged policy. *Turner*, 482 at 90. Furthermore, alternatives means of exercising the right do not have to be ideal, they must simply be available. *See Overton*, 539 U.S. at 135.

### C. Washington State Constitution

In some cases, the Washington State Constitution provides greater liberty protections than the United States Constitution. *See Bradburn v. N. Cent. Reg'l Libr. Dist.*, 168 Wash. 2d 789, 800 (2010). However, unless a litigant explains how the Washington State Constitution provides greater protection, a court must assume that the protections of the Washington State Constitution and the United States Constitution are coextensive. *See State v. Gunwall*, 106 Wash. 2d 54, 61–63 (1986). In other words, a plaintiff's failure to present analysis of the six *Gunwall* factors means that a court cannot consider whether the Washington State Constitution provides additional protection. *See In re Pers. Restraint of Grasso*, 151 Wash. 2d 1, 35 n. 12 (2004) (ignoring claims regarding Washington State Constitution when plaintiff failed to conduct *Gunwall* analysis).

### Analysis

Defendants are entitled to summary judgment on all of Plaintiff's claims:

1. Even when viewing the facts in the light most favorable to Plaintiff, no reasonable jury would find that Plaintiff's rights under RLUIPA were violated because Plaintiff cannot establish that Defendants' policy regarding personal yoga mats and zafus for in-cell religious practice substantially burdened his religious exercise. Plaintiff has conceded that he is able to practice meditation and yoga in his cell daily even without a personal yoga mat and zafu, and that yoga mats are

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT #6**

available in the common rooms. Plaintiff's ability to practice meditation and yoga demonstrate that Defendants' policy has not substantially pressured Plaintiff to violate his religious beliefs. *See Hartmann*, 707 F.3d. at 1125. Even assuming Plaintiff could demonstrate that the policy substantially burdens his religious practice, Defendants have demonstrated that the policy is the least restrictive means of furthering a compelling government interest. It is clearly established that facility order; safety; and security are compelling government interests, and Defendants have listed multiple reasons why allowing personal yoga mats and zafus for in-cell religious practice would have adverse effects on those interests. Defendants note that yoga mats, due to the materials they are made from, can be used to defeat crowd control measures such as pepper spray and tasers, thus presenting a heightened risk during cell extractions, and that zafus, due to the materials used to fill them, can be used to hide contraband, thus presenting a risk of drugs; weapons; or other dangerous items being concealed within the facility. Given the implications of these concerns, Defendants are entitled to deference, and the policy appears to be the least restrictive means available, particularly given the availability of yoga mats in the common areas. *See Cutter*, 544 U.S. 709, 724 n. 13.

     2.    Even when viewing the facts in the light most favorable to Plaintiff, no reasonable jury would find that Plaintiff's rights under the Free Exercise Clause of the First Amendment of the United States Constitution were violated because Plaintiff cannot establish that Defendants' policy regarding personal yoga mats and zafus for in-cell religious practice were not reasonably related to a legitimate penological interest. As noted above, the policy is clearly reasonably related to the legitimate penological interest of maintaining facility order, safety, and security because it prevents inmates from being able to counter crowd control measures and hide contraband. Moreover, and again as noted above, Plaintiff maintains alternative means of exercising his right to religious exercise: he is able to practice

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT #7**

meditation and yoga in his cell, and to do so in the common room with the added benefit of a non-personal yoga mat. While Defendants have conceded that these alternatives may not be ideal, they are nevertheless available, thus satisfying the *Turner* analysis. *See Overton*, 539 U.S. at 135.

3. Plaintiff's complaint and construed response are at times difficult to follow; however, it appears that he seeks relief under the Washington State Constitution in addition to the United States Constitution. However, he has failed to present any *Gunwall* analysis whatsoever, and thus any claims that may have been exclusive to the Washington State Constitution have been swallowed by the Court's rulings regarding the United States Constitution. *See Grasso*, 151 Wash. at 35 n. 12.

## Conclusion

No reasonable jury could find that Plaintiff's statutory rights under RLUIPA, or his constitutional rights under either the United States Constitution or the Washington State Constitution, were violated. Therefore, summary judgment in favor of Defendants is appropriate.

Accordingly, **IT IS HEREBY ORDERED**:

1. Defendants' Motion for Summary Judgment, ECF No. 43, is **GRANTED**.

2. The Clerk of Court is directed to **ENTER JUDGMENT** in favor of Defendants and against Plaintiff.

**IT IS SO ORDERED**. The Clerk of Court is directed to enter this Order, provide copies to Plaintiff and counsel, and **close the file**.

DATED the 19th day of August 2025.



_____
Stan Bastian
Chief United States District Judge

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT #8**